# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM K. SHERRELL, et al.,<br><br>　　　　　　　　　　Plaintiff,<br>　　vs.<br><br>BANK OF AMERICA, N.A.,<br>et al.,<br>　　　　　　　　　　Defendants.<br>_____/ | CASE NO. CV F 11-1785 LJO JLT<br><br>**ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS**<br>(Doc. 11.) |

## INTRODUCTION

Defendants Bank of America, N.A. ("B of A"), and ReconTrust Company, N.A. ("ReconTrust"), seek to dismiss as legally barred pro se plaintiffs Adam K. Sherrell and Joni M. Sherrell's (collectively the "Sherrells'") claims arising out of the default loan for and foreclosure of their Bakersfield property ("property"). This Court construes the Sherrells' action as an attempt to thwart, delay or complicate their eviction from the property and transfer of the property after non-judicial foreclosure. For the reasons discussed below, this Court DISMISSES this action against B of A and ReconTrust (collectively "defendants") based on the Sherrells' absence of credible claims.

1

# BACKGROUND

## The Sherrells' Loan And Property Foreclosure

On March 15, 2005, the Sherrells obtained a $263,700 loan from WMC Mortgage Corporation to finance the property. The loan was secured by a Deed of Trust ("DOT") executed by the Sherrells in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as DOT beneficiary. The DOT named Westwood Associates ("Westwood") as trustee and was recorded on March 28, 2005.[1]

After the Sherrells defaulted, ReconTrust, as MERS agent, recorded on December 13, 2007 a Notice of Default and Election to Sell under Deed of Trust. On March 19, 2008, MERS recorded a Substitution of Trustee to substitute ReconTrust as DOT trustee. On March 19, 2008, ReconTrust recorded a Notice of Trustee's Sale to set an April 3, 2008 sale of the property. The sale did not occur.

On November 30, 2010, MERS recorded a Substitution of Trustee and Assignment of Deed of Trust to again substitute ReconTrust as DOT trustee and to assign beneficial interest under the DOT to Wells Fargo, N.A. On November 30, 2010, ReconTrust recorded a new Notice of Trustee's Sale, and the property was sold at an October 31, 2011 trustee's sale to defendant LSG Ventures LLC.

## The Sherrells' Claims

The Sherrells filed this action on October 26, 2011 and proceed on their operative (first) Amended Complaint for Injunctive Relief and Declaratory Judgment Relief ("FAC"). The FAC purports to allege "an action for rescission, retirement and return of an illegal Note" as well as violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and TILA's implementing Regulation Z, 12 C.F.R. §§ 226, et seq. The FAC accuses "Defendants"[2] of various non-disclosures and failures in connection with the Sherrells' loan. The FAC further purports to enjoin "Defendants . . . from continuing in force and effect an unlawful sale against the property." The FAC seeks monetary damages and declaratory relief that the Sherrells are "entitled to rescission of the entire mortgage and promissory note amounting to clear title to the property."

---

[1] Documents pertaining to the property loan and foreclosure were recorded with the Kern County Official Records.

[2] The FAC also names as defendants LSG Ventures, LLC and Law Office of Sandra Kuhn McCormack and lumps all named defendants together without distinguishing their respective alleged wrongs.

2

## DISCUSSION

### Sua Sponte Dismissal

Defendants fault the FAC's failure "to allege any specific wrongdoing by defendants" and characterize the FAC as "24 pages of cutting and pasting from various Internet websites." Defendants criticize the FAC's failure to allege B of A's involvement in origination of the Sherrells' loan in that it only serviced the loan. Defendants further note the FAC's absence of allegations as to ReconTrust's "foreclosure-related wrongdoing."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not

assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

As discussed below, the FAC is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. In short, the FAC's claims are legally barred.

**Failure To Satisfy F.R.Civ.P. 8**

The FAC is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a

5

complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

When suing multiple defendants, a plaintiff "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

The FAC fails to satisfy F.R.Civ.P. 8. The FAC lacks cognizable facts of defendants' purported wrongdoing to provide fair notice as to what each defendant is to defend. The FAC appears to present a litany of vague loan origination violations. The FAC merely references TILA and Regulation Z sections without connecting their alleged violation to defendants. The FAC throws out terms, such as, "failed and/or refused," "never . . . delivered," "did not at any time disclose with verifiable evidence," "have not exhibited the instrument as required by law," "have not produced reasonable identification," and "have not provided a reasonable authority to present the instrument" without meaningful reference to the parties. The FAC lacks cognizable claims or legal theories upon which to support defendants' liability. The FAC lacks specific, clearly defined allegations to give fair notice of claims plainly and succinctly to warrant dismissal of this action.

/ / /

## **Failure To Tender**

### *Common Law And Equitable Claims*

The Sherrells' failure to tender amounts owed on their loan serves as a global defense to the FAC's claims despite whether they are based on common law, equity or TILA.

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical

ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt"). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

8

1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the FAC nor record references the Sherrells' tender of indebtedness or meaningful ability to do so. The FAC is silent as to tender of indebtedness and merely alleges that the Sherrells are "entitled to rescission of the entire mortgage and promissory note." Such silence on the Sherrells' tender of or ability to tender amounts outstanding is construed as their concession of inability to do so. Without the Sherrells' meaningful tender, the Sherrells seek empty remedies, not capable of being granted, and the FAC's purported claims are doomed.

### *Truth In Lending Act*

The FAC appears to assert TILA and Regular Z discrepancies. Under TILA, the "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) addresses rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may

> be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation. (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)). The Ninth Circuit, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted." *See Yamamoto*, 329 F.3d at 1172. Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172. "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173. The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission

> obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

The FAC does not address conditions precedent to permit rescission under TILA. The FAC is not a timely, valid rescission notice. "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821. Without the Sherrells' meaningful tender, the FAC's claims, including those referencing TILA, are doomed.

## TILA Limitations Periods

Defendants challenge FAC TILA claims as time barred.

### *Damages Limitations Period*

A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

---

[3] The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Defendants astutely note the FAC's allegations of TILA failures at the time of the March 15, 2005 loan origination. The face of the FAC illustrates that TILA damages claims are time barred in that the Sherrells consummated their loan on March 15, 2005 and filed their original complaint on October 26, 2011, more than six years after their loan transaction. TILA damages claims are doomed.

### *Rescission Limitations Period*

To the extent that the FAC pursues a TILA rescission claim, it too is time barred.

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986); 15 U.S.C. § 1635(a). TILA rescission may be extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791 F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

> An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after the three-year period has run:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to

resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

The FAC alleges, and matters subject to judicial notice reflect, that the Sherrells' loan was consummated on March 15, 2005 to render a TILA rescission remedy expired prior to the October 26, 2011 filing of the Sherrell's original complaint. TILA rescission is time barred.

### *Equitable Tolling*

Defendants challenge application of equitable tolling to save TILA claims from expired limitations periods.

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). The Ninth Circuit Court has explained:

> Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing until the plaintiff can gather what information he needs. . . . However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

*Santa Maria*, 202 F.3d at 1178 (citation omitted).

Courts are reluctant to invoke equitable tolling:

> A statute of limitations is subject to the doctrine of equitable tolling; therefore, relief from strict construction of a statute of limitations is readily available in **extreme cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire . . . Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights." . . .

*Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his

13

claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)). "[T]o adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.

The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998). The plaintiff must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry. *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566. As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal. *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The FAC lacks necessary allegations for equitable tolling. The FAC references vague TILA discrepancies and lacks allegations that defendants prevented the Sherrells to compare what documents they received to the TILA disclosure requirements. *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no evidence suggested that lender concealed its alleged breach). Nothing suggests that the Sherrells lacked information relevant to discovery of a TILA violation when their loan was consummated. The FAC offers nothing to demonstrate that despite the Sherrells' due diligence, they were unable to obtain information of a TILA violation. The FAC is silent as to their purported due diligence. Moreover, the limitations period for TILA rescission is a statute of repose not subject to equitable tolling. TILA claims are time barred and subject to dismissal.

### Limited Scope Of TILA Liability

Defendants argue that they escape TILA liability in that they are neither original creditors nor assignees of an original creditor.

"The only parties who can be liable for Truth in Lending Act ("TILA") violations are the original

creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1641.  A "creditor" "refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . ., and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ." 15 U.S.C. § 1602(f).

Servicers of consumer obligations are not to be treated as assignees for purposes of imposing liability unless they are also the owner of the obligation. 15 U.S.C. § 1641(f)." *Chow v. Aegis Mortg. Corp.*, 286 F.Supp.2d 956, 959 (N.D. Ill. 2003); *see Consumer Solutions REO, LLC v. Hillery*, 2010 WL 144988, at *3 (N.D. Cal. 201) ("a TILA damages claim predicated on a violation of § 1641(f)(2) cannot stand because TILA allows for a suit against a creditor or an assignee but not a servicer"); *Fullmer v. JPMorgan Chase Bank, N.A.*, 2010 WL 95206, at *3 (E.D. Cal. 2010) ("Civil liability under TILA applies to creditors"); *Horton v. Country Mortgage Services, Inc.*, 2010 WL 55902, at *3 (N.D. Ill. 2010) ("TILA expressly disclaims any liability for mere servicers "unless the servicer is or was the owner of the obligation"); *Marks v. Ocwen Loan Servicing*, 2008 WL 344210, at *2 (N.D. Cal. 2008) ("loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point").

Defendants note that neither of them "was at any time a creditor of plaintiffs' loan" in that B of A was "the servicer of the loan" and "ReconTrust was at some point substituted" as DOT trustee. Defendants point out that neither of them was assigned a beneficial interest under the DOT.  Defendants are correct that their roles as loan servicer and substituted DOT trustee fail to subject them to TILA liability to further doom TILA claims.

### Injunctive Relief

The FAC seeks injunctive relief and alleges that the Sherrells are entitled to restraint of "the commission of the continuance of the acts complained of, specifically, sale and/or entry to remove Plaintiff from the property, removal of private and personal property."

A court may only grant injunctive relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008).  To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer

irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest. *Winter*, 129 U.S. at 374.

In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009). Injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997) (citation omitted). Pursuant to *Winter*, plaintiff must make a "clear showing" that he is "likely to succeed on the merits." *Winter*, 129 S.Ct. at 375-376; *Stormans*, 571 F.3d at 978.

Defendants challenge the Sherrells' ability to show likelihood of success on the merits in that the FAC claims are time barred, fail to allege foreclosure defects to overturn foreclosure, and fail to satisfy tender requirements to provide the Sherrells standing. Defendants are correct. The Sherrells are unable to show success on the merits with the doomed FAC claims and thus are not entitled to injunctive relief.

**Attempt At Amendment And Malice**

As discussed above, the FAC's global claims are barred legally, and the Sherrells are unable to cure their claims by allegation of other facts and thus are not granted an attempt to amend. Moreover, this Court surmises that plaintiffs brought this action in absence of good faith and that plaintiffs seek to exploit the court system solely for delay or to vex defendants. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action.

///

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against defendants;

2. DIRECTS the clerk to enter judgment against plaintiffs Adam K. Sherrell and Joni M. Sherrell and in favor of defendants Bank of America, N.A., and ReconTrust Company, N.A., in that there is no just reason to delay to enter such judgment given that the Sherrells' claims against these defendants and their alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b); and

3. ORDERS plaintiffs, no later than January 6, 2012, to file papers to show cause why this Court should not dismiss this action against defendants LSG Ventures, LLC and Law Office of Sandra Kuhn McCormack.

**This Court ADMONISHES the Sherrells that this Court will dismiss this action against defendants LSG Ventures, LLC and Law Office of Sandra Kuhn McCormack if the Sherrells fail to comply with this order and fail to file timely papers to show cause why this Court should not dismiss this action against defendants LSG Ventures, LLC and Law Office of Sandra Kuhn McCormack.**

IT IS SO ORDERED.

**Dated:   December 22, 2011**                /s/ Lawrence J. O'Neill
                                                                UNITED STATES DISTRICT JUDGE